LATHAM & WATKINS LLP
Alexander C.K. Wyman (Cal. Bar No. 295339)
  alex.wyman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Serrin Turner (*pro hac vice*)
  serrin.turner@lw.com
Matthew P. Valenti (*pro hac vice*)
  matthew.valenti@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

*Attorneys for Defendant*
*Whaleco Inc. d/b/a Temu*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISHA JONES, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>WHALECO, Inc., d/b/a TEMU; PDD Holdings, Inc., f/k/a PINDUODOU Inc.; and DOES 1-100, inclusive,<br><br>            Defendants. | Case No. 2:25-cv-04677-HDV-AS<br><br>**DEFENDANT WHALECO INC.'S NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER FOR *FORUM NON CONVENIENS*; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Hernán D. Vera<br>Hearing Date: August 7, 2025<br>Time: 10:00 am<br>Courtroom: 5B |

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2    **PLEASE TAKE NOTICE** that on August 7, 2025 at 10:00 am, or as soon

3    thereafter as the matter may be heard before the Honorable Hernán Vera in

4    Courtroom 5B, of the United States District Court, Central District of California,

5    located at 350 W. 1st Street, 5th Floor, Los Angeles, CA 90012, Whaleco Inc. d/b/a/

6    Temu ("Temu") will and hereby does move the Court for an order dismissing the

7    action, pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative

8    for an order transferring the above-referenced action to the U.S. District Court for

9    the Eastern District of New York, pursuant to 28 U.S.C. § 1404(a).

10    This motion is based on this Notice of Motion, the accompanying

11    Memorandum of Points and Authorities, the Declaration of Michael Trinh and the

12    exhibit attached thereto, the pleadings and records on file herein, and upon all other

13    arguments and evidence that may be presented to this Court.

14    Pursuant to L.R. 7-3, on June 23, 2025, counsel for Temu notified Plaintiffs

15    on the substance of the motion to dismiss and asked for a meet and confer. Counsel

16    for Plaintiffs responded on June 25, 2025, and the parties met and conferred on June

17    26, 2025. The parties remain unable to resolve the issues raised by this Motion.

18
19
20
21
22
23
24
25
26
27
28

1    Dated: June 30, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LATHAM & WATKINS LLP

By: _/s/ Alexander C.K. Wyman_
    Alexander C.K. Wyman
    _alex.wyman@lw.com_
    355 South Grand Avenue, Suite 100
    Los Angeles, CA 90071
    Telephone: +1.213.485.1234
    Facsimile: +1.213.891.8763

Serrin Turner (_pro hac vice_)
    _serrin.turner@lw.com_
Matthew P. Valenti (_pro hac vice_)
    _matthew.valenti@lw.com_
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

_Attorneys for Defendant_
_Whaleco Inc. d/b/a Temu_

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................. 1

II.    BACKGROUND ..................................................................... 2

    A.    Temu and the Terms ..................................................... 2

    B.    Related Litigations Against Temu in EDNY ...................... 3

    C.    Plaintiffs File Copycat Complaints in California ............... 4

III.    LEGAL STANDARD .............................................................. 5

IV.    ARGUMENT ......................................................................... 6

    A.    The Parties' Forum Selection Clause Must Be Enforced as Mandatory .......................................................... 6

        1.    The Forum Selection Clause Is Valid, Mandatory, and Encompasses Plaintiffs' Claims ......................... 7

        2.    Enforcement of the Forum Selection Clause Is Not Unreasonable or Unjust ...................................... 8

    B.    The Doctrine of *Forum Non Conveniens* Mandates Dismissal Or, in the Alternative, a Transfer to EDNY, Based on the Forum Selection Clause ................................ 11

        1.    An Adequate Alternative Forum Exists .................. 11

        2.    The Public Interest Factors Support Dismissal Or, in the Alternative, a Transfer to EDNY ................ 12

V.    CONCLUSION ..................................................................... 15

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS OR, IN THE ALT., MOTION
TO TRANSFER FOR FORUM NON CONVENIENS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Argueta v. Banco Mexicano, S.A.*,
  87 F.3d 320 (9th Cir. 1996) ............................................................................. 7, 8

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013) ......................................................... 5, 6, 11, 12, 13

*Boston Telecomms. Grp., Inc. v. Wood*,
  588 F.3d 1201 (9th Cir. 2009) ................................................................... 6, 13

*Bromlow v. D & M Carriers, LLC*,
  438 F. Supp. 3d 1021 (N.D. Cal. 2020) ............................................................ 13

*Carijano v. Occidental Petroleum Corp*,
  643 F.3d 1216 (9th Cir. 2011) ................................................................... 11, 12

*Cleanview Distrib. Grp. LLC v. LGL Holdings, LLC*,
  2021 WL 5969502 (C.D. Cal. Nov. 12, 2021) .................................................... 14

*Color Switch LLC v. Fortafy Games DMCC*,
  377 F. Supp. 3d 1075 (E.D. Cal. 2019), *aff'd*, 818 F. App'x 694
  (9th Cir. 2020) ............................................................................................ 6

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986) .......................................................................... 5

*Docksider, Ltd. v. Sea Tech., Ltd.*,
  875 F.2d 762 (9th Cir. 1989) .......................................................................... 7

*E. & J. Gallo Winery v. Andina Licores S.A.*,
  446 F.3d 984 (9th Cir. 2006) .......................................................................... 5

*Guimei v. Gen. Elec. Co.*,
  91 Cal. Rptr. 3d 178 (2009) .......................................................................... 14

*Hackwith v. Apple Inc.*,
  2009 WL 10674053 (C.D. Cal. Aug. 12, 2009) ............................................... 14

*Hu v. Whaleco, Inc.*,
  2024 WL 4481439 (E.D.N.Y. Oct. 1, 2024) .................................................. 4, 9

*Hu, et al. v. Whaleco, Inc., et al.*,
 No. 23-cv-06962 (E.D.N.Y. 2023) ................................................................ 3, 12

*In re Facebook, Inc. S'holder Derivative Priv. Litig.*,
 367 F. Supp. 3d 1108 (N.D. Cal. 2019) ...................................................... 5, 9, 10

*In re: CytRx Corp. S'holder Derivative Litig.*,
 2015 WL 9871275 (C.D. Cal. Oct. 30, 2015) .................................................. 9

*Kohler v. Whaleco, Inc.*,
 757 F. Supp. 3d 1112 (S.D. Cal. 2024) .......................................................... 9

*Losson v. Union des Associations Europeennes de Football*,
 2024 WL 3406987 (N.D. Cal. July 11, 2024) ................................................ 8

*Lueck v. Sundstrand Corp.*,
 236 F.3d 1137 (9th Cir. 2001) ................................................................. 11, 12

*M/S Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1 (1972) ..................................................................................... 7

*McCullough v. World Wrestling Ent., Inc.*,
 2015 WL 13835101 (C.D. Cal. July 10, 2015) ............................................. 7

*McMahan, et al. v. Whaleco, Inc.*,
 No. 25-cv-01590 (E.D.N.Y. 2025) ................................................................ 3

*Miller v. Hearst Commc'ns, Inc.*,
 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012) ................................................ 10

*Murphy v. Schneider Nat'l, Inc.*,
 362 F.3d 1133 (9th Cir. 2004) ................................................................... 7

*N.Z. v. Fenix Int'l Ltd.*,
 2025 WL 1122493 (C.D. Cal. Apr. 9, 2025) ........................................ 7, 8, 10

*Neuralstem, Inc. v. ReNeuron, Ltd.*,
 365 F. App'x 770 (9th Cir. 2010) .............................................................. 12

*Nibirutech Ltd. v. Jang*,
 75 F. Supp. 3d 1076 (N.D. Cal. 2014) ................................................... 11, 12

*Reddy v. Mediscribes, Inc.*,
 2020 WL 2220202 (C.D. Cal. Feb. 18, 2020) .............................................. 14

*Richards v. Lloyd's of London*,
   135 F.3d 1289 (9th Cir. 1998) ................................................................ 9

*Romano v. Weiss*,
   2017 WL 3081694 (C.D. Cal. Feb. 15, 2017) ...................................... 14

*Satisfied Brake Prods. Inc. v. Savage*,
   2010 WL 11595845 (C.D. Cal. Dec. 2, 2010) ...................................... 15

*Unicolors Inc. v. Myth Clothing Co.*,
   2016 WL 738289 (C.D. Cal. Feb. 22, 2016) ........................................ 14

*Wallace v. Int'l Paper Co.*,
   2020 WL 4938361 (C.D. Cal. July 2, 2020) ............................... 6, 13, 14

*Westside Winery, Inc. v. Palm Bay Int'l, Inc.*,
   2018 WL 4278665 (N.D. Cal. Aug. 3, 2018) ........................................ 15

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018) ..................................................... 5, 7, 10

*Ziboukh, et al. v. Whaleco, Inc., et al.*,
   No. 24-cv-03733 (E.D.N.Y. 2024) ......................................................... 3

**STATUTES**

28 U.S.C.
   § 1404 ........................................................................................................ 5
   § 1404(a) ............................................................................... 2, 5, 12, 13

**RULES**

Fed. R. Civ. P. 12(b)(3) ................................................................................ 2

## I.    INTRODUCTION

Plaintiffs filed this action in the wrong forum. The Complaint should be dismissed pursuant to the mandatory forum selection clause in the agreement that governs Plaintiffs' use of Temu's services and should be transferred to the Eastern District of New York ("EDNY")—where similar claims are being litigated against Temu, as Plaintiffs surely know, because their complaint is a copycat of those in EDNY.

Plaintiffs are registered users of the Temu e-commerce platform and assented to Temu's Terms of Use ("Terms") when they created their accounts. The Terms contain an arbitration agreement and, for disputes not subject to arbitration, a mandatory forum selection clause requiring that "[a]ny dispute . . . aris[ing] out of" Plaintiffs' use of Temu must be litigated "in New York, New York." Declaration of Michael Trinh ("Trinh Decl.) Ex. A ("Terms") § 18.4. Accordingly, to the extent Plaintiffs contend their claims are not subject to arbitration, the Terms require the parties to litigate their claims exclusively in New York courts. The forum selection clause requires dismissal and/or transfer of this case to a New York court under binding Ninth Circuit authority.

*First*, the forum selection clause in the Terms is valid and enforceable. Indeed, in analyzing motions to dismiss or transfer based on forum selection clauses, courts treat such clauses as presumptively valid. Here, Plaintiffs cannot point to anything that would render the Terms as a whole, or the forum selection clause specifically, invalid or unenforceable.

*Second*, the forum selection clause plainly applies to Plaintiffs' claims here (to the extent Plaintiffs believe they are not subject to arbitration). The clause covers any claims arising out of or in connection with Temu's services, including the claims in the Complaint, which concern the alleged privacy violations resulting from Plaintiffs' use of the Temu app and/or website.

1   *Third*, enforcing the forum selection clause would not be unreasonable or
2   unjust. Plaintiffs consented to Temu's Terms and will be able to fairly and fully
3   litigate their case in New York courts. Because there are multiple related cases in
4   EDNY, dismissing or transferring the case to EDNY is the appropriate remedy here
5   to promote judicial economy and streamline the litigation.

6   *Fourth*, while the court need not weigh these when there is a valid forum
7   selection clause, the public interest factors under the *forum non conveniens*
8   analysis—the applicable test here—fully support transferring this case to EDNY.
9   The New York courts' familiarity with the law and facts of this case weigh in favor
10  of transfer. The remaining factors like California's local interest, the burden on the
11  courts, congestion, and cost of litigating the case in another forum have minimal
12  influence because Plaintiffs are from nearly all 50 states with state, federal, and
13  common law causes of action.

14  **II.    BACKGROUND**

15  **A.    Temu and the Terms**

16      Temu is an e-commerce company that connects consumers with sellers,
17  manufacturers, and brands around the world. Compl. ¶¶ 4, 11, 17. Temu makes its
18  services available to consumers through its website (https://temu.com) and mobile
19  apps. *Id.* at ¶ 4.

20      Plaintiffs each allege to be users of Temu. *See* Trinh Decl. ¶ 4. To register a
21  Temu account, whether through Temu's app or website, users must agree to the
22  Terms. *See id.* at ¶ 5. The Terms make clear, at the very top, that "[they] form a
23  binding agreement," and [b]y completing the registration process . . . you represent
24  that [] you have read, understand and agree to be bound by the Terms." Terms at
25  Introduction. There are two provisions relevant here.

26      *First*, subject to exceptions not applicable here, the Terms require arbitration
27  of all disputes between the parties. Specifically, the Terms provide that "you and we
28  agree that any dispute, claim, or disagreement arising out of or relating in any way

1  to your access to or use of the Services . . . will be resolved by binding arbitration."

2  *See* Terms § 19.1.

3      *Second*, the Terms include a mandatory forum selection clause, providing that

4  any dispute arising out of or in connection with Temu's services that is not subject

5  to arbitration must exclusively be litigated in New York courts:

6  
7      Any dispute of any sort between you and us that arises out
of or in connection with the Services and is not subject to
arbitration or eligible for small claims action, **shall be
decided exclusively by a court of competent
jurisdiction located in New York, New York**. You
hereby consent to, and waive all defense of lack of
personal jurisdiction and *forum non conveniens* with
respect to, venue and jurisdiction in such courts.

12  Terms at § 18.4 (emphasis added).

13      **B.**    **Related Litigations Against Temu in EDNY**

14      Multiple cases asserting the same legal theories and factual allegations that

15  Plaintiffs advance in their Complaint here have been resolved or are currently

16  pending against Temu in EDNY: *Hu, et al. v. Whaleco, Inc., et al.*, No. 23-cv-06962

17  (E.D.N.Y. 2023); *Ziboukh, et al. v. Whaleco, Inc., et al.*, No. 24-cv-03733 (E.D.N.Y.

18  2024); and *McMahan, et al. v. Whaleco, Inc.*, No. 25-cv-01590 (E.D.N.Y. 2025).

19  Each of these cases is assigned to Chief Judge Margo Brodie and designated as

20  related. *See* Notice of Related Case and Order Reassigning Case, *McMahan*, No. 25-

21  cv-01590 (E.D.N.Y Apr. 25, 2025 and Apr. 29, 2025) (ECF No. 7). The Plaintiffs in

22  each complaint allege the same basic theory: that Temu "design[ed] the Temu App

23  . . . to surreptitiously obtain, improperly gain knowledge of, review, and retain

24  Plaintiffs' and the Class's private and personally identifiable data and content." Am.

25  Compl. ¶ 320, *Hu*, No. 23-cv-06962, (E.D.N.Y. Sept. 20, 2023) (ECF No. 19); *see*

26  *also* Second Amended Complaint ("SAC") ¶ 5, *Ziboukh*, No. 24-cv-03733

27  (E.D.N.Y. Sept. 20, 2024) (ECF No. 64) (alleging that "Temu collects user data

28  beyond what is necessary for an online shopping app" and uses "a complete arsenal

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS OR, IN THE ALT., MOTION
TO TRANSFER FOR FORUM NON CONVENIENS

of tools to exfiltrate virtually all the private data on a user's device"). On October 1,
2024, Judge Brodie granted Temu's motion to compel arbitration in the *Hu* case,
finding that the Terms formed a valid contract between the parties and the arbitration
agreement therein was enforceable. *See Hu v. Whaleco, Inc.*, 2024 WL 4481439
(E.D.N.Y. Oct. 1, 2024). The *Ziboukh* and *McMahan* cases are still pending in
EDNY before Judge Brodie.

### C.  Plaintiffs File Copycat Complaints in California

To date, Plaintiffs' counsel has filed nearly a dozen identical lawsuits against
Temu in California state court—each on behalf of 900+ individual plaintiffs—
specifically to avoid class action jurisdiction. Plaintiffs' counsel appears to have
copied the *Hu* and *Ziboukh* complaints that were or are pending in EDNY, yet chose
to file each of their complaints against Temu in a different forum. That is apparent
by looking at the opening few paragraphs of the Complaint, which Plaintiffs lifted
almost verbatim from the operative complaint in *Ziboukh*:

| *Ziboukh* Complaint | *Coles* Complaint |
|---|---|
| "Temu purports to be an online shopping platform, but it is dangerous malware, surreptitiously granting itself access to virtually all data on a user's cell phone." SAC ¶ 96, *Ziboukh*, No. 24-cv-03733 (E.D.N.Y. Sept. 20, 2024) (ECF No. 64). | "[T]he Temu app is actually dangerous malware, surreptitiously granting itself access to virtually all data on a user's cell phone." Compl. ¶ 4. |
| "[Temu is] is purposefully designed to gain unrestricted access to a user's phone operating system," and "Temu is designed to make this expansive access undetected, even by sophisticated users." SAC ¶¶ 11, 148, *Ziboukh*, No. 24-cv-03733 (E.D.N.Y. Sept. 20, 2024) (ECF No. 64). | "Temu is purposefully designed to gain unrestricted access to a user's phone operating system," and "Temu is designed to make this expansive access undetected, even by sophisticated users." Compl. ¶ 5. |
| "Once installed, Temu can recompile itself and change properties, including overriding the data privacy settings users believe they have in place," and "[e]ven users without the Temu app are | "Once installed, Temu can recompile itself and change properties, including overriding the data privacy settings users believe they have in place. Even users without the Temu app are subject |

| subject to Temu's gross overreach if any of their information is on the phone of a Temu user. Temu monetizes this unauthorized collection of data by selling it to third parties." SAC ¶¶ 134, 148, *Ziboukh*, No. 24-cv-03733 (E.D.N.Y. Sept. 20, 2024) (ECF No. 64). | to Temu's gross overreach if any of their information is on the phone of a Temu user. Temu monetizes this unauthorized collection of data by selling it to third parties." Compl. ¶ 6. |
|---|---|

Accordingly, the claims and allegations in the Complaint here overlap significantly with—and indeed are based on—the three other lawsuits against Temu before Judge Brodie in EDNY.

## III.   LEGAL STANDARD

In the Ninth Circuit, there is "a strong policy in favor of the enforcement of forum selection clauses." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 992 (9th Cir. 2006). Where the parties have agreed to a valid forum selection clause that points to a particular forum, "the appropriate way to enforce [it] is through the doctrine of *forum non conveniens*" under the rubric of 28 U.S.C. § 1404. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens*," and where there is a specific transferee forum "within the federal court system," "Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.*; *see Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1093 (9th Cir. 2018) (affirming district court's dismissal for *forum non conveniens* based on forum selection clause); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("*[F]orum non conveniens* considerations are helpful in deciding a § 1404 transfer motion.").

Where, as here, the parties are subject to a valid forum selection clause, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *In re Facebook, Inc. S'holder*

1  *Derivative Priv. Litig.*, 367 F. Supp. 3d 1108, 1119 (N.D. Cal. 2019). As the

2  Supreme Court has held, the parties' chosen forum—here, New York courts—must

3  be "given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571

4  U.S. at 63. Accordingly, the Court "should not consider arguments about the parties'

5  private interests," and should at most, apply only the public interest facts under the

6  traditional *forum non conveniens* test. *Id.* at 63-64. Those factors are: "(1) the local

7  interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the

8  burden on local courts and juries, (4) congestion in the court, and (5) the costs of

9  resolving a dispute unrelated to a particular forum." *Boston Telecomms. Grp., Inc.*

10  *v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009). The plaintiff "bear[s] the burden of

11  showing that public-interest factors overwhelmingly disfavor a transfer." *Wallace v.*

12  *Int'l Paper Co.*, 2020 WL 4938361, at *6 (C.D. Cal. July 2, 2020).

13  **IV.    ARGUMENT**

14       The Court should dismiss the Complaint under *forum non conveniens*, or in

15  the alternative, transfer the action to EDNY. Plaintiffs agreed to arbitrate all the

16  claims in their Complaint; and to the extent they believe their claims are not subject

17  to arbitration, they are required to litigate exclusively in a New York court—and the

18  most appropriate venue for them to do so is EDNY, where related cases have been

19  litigated, and are still being litigated, against Temu.

20       **A.    The Parties' Forum Selection Clause Must Be Enforced as**
21       **Mandatory**

22       "Under the *forum non conveniens* analysis, the initial inquiry is whether the

23  forum selection clause is valid. The Supreme Court has found that forum selection

24  clauses are presumptively valid and should be honored 'absent some compelling and

25  countervailing reason.'" *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp.

26  3d 1075, 1082 (E.D. Cal. 2019), *aff'd*, 818 F. App'x 694 (9th Cir. 2020). So long as

27  the forum selection clause is valid, a district court "must enforce a forum-selection

28  clause unless the contractually selected forum affords the plaintiffs no remedies

whatsoever." *Sun*, 901 F.3d at 1092. Here, the Terms' forum selection clause is valid because there are no "compelling" circumstances precluding its enforcement, and EDNY is an adequate forum in which to litigate Plaintiffs' claims—whether on the merits or pursuant to a motion to compel arbitration (as Temu has so moved in the *Hu* and *Ziboukh* cases).

### 1. The Forum Selection Clause Is Valid, Mandatory, and Encompasses Plaintiffs' Claims

The Terms' forum selection clause is valid and controls as to the appropriate forum to litigate Plaintiffs' Complaint. "[F]orum selection clauses are *prima facie* valid . . . ." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)) (emphasis added). As the party challenging the forum selection clause, Plaintiffs "bear[] a heavy burden of proof and must clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting *M/S Bremen*, 407 U.S. at 15) (internal quotations omitted).

When interpreting a forum selection clause's scope, a court must "start[] with the contract's plain language, assign[] words their ordinary meaning, and look[] to 'general principles' for interpreting contracts." *N.Z. v. Fenix Int'l Ltd.*, 2025 WL 1122493, at *3 (C.D. Cal. Apr. 9, 2025). The forum selection clause, by use of the word "shall," is mandatory and designates New York courts as the exclusive forum for claims arising out of or connected to the Terms. *See Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) ("The prevailing rule is . . . that where venue is specified with mandatory language the clause will be enforced.").

The forum selection clause here broadly applies to any dispute "that arises out of or in connection with [Temu's] Services." Terms § 18.4. That language encompasses Plaintiffs' claims here. "The phrase 'arising out of or relating' reaches a broad range of claims." *McCullough v. World Wrestling Ent., Inc.*, 2015 WL

13835101, at *4 (C.D. Cal. July 10, 2015). And "in connection with" applies "to any disputes that reference the agreement or have some logical or causal connection to the agreement." *N.Z.*, 2025 WL 1122493, at *3 (internal quotations omitted). Here, Plaintiffs' claims and alleged injuries all stem from Plaintiffs' use of Temu's services, which is governed by the Terms. For example, Plaintiffs allege that Temu can access user data "whenever the app is running," and that "user permission" is not required to gather this information. Compl. ¶¶ 46, 48. Because Plaintiffs' claims, including the claims based in privacy laws, are based on their use of Temu's app and/or website, and the Terms govern access to or use of the Temu app and/or website, the dispute has a "logical or causal connection" to the Terms, and the forum selection clause controls. *See, e.g.*, *N.Z.*, 2025 WL 1122493, at *3 (holding that the plaintiffs' claims were covered by the forum selection clause when the plaintiffs' alleged injuries all stemmed from use of the defendants' website, which is governed by the defendant's terms of use and privacy policy); *Losson v. Union des Associations Europeennes de Football*, 2024 WL 3406987, at *2 (N.D. Cal. July 11, 2024) (holding that the at-issue websites' terms and conditions' forum selection clause had a "logical or causal connection" to the plaintiff's Video Privacy Protection Act claim because those terms "govern[ed] his access to and use of the websites which led to the alleged violations").

### 2. Enforcement of the Forum Selection Clause Is Not Unreasonable or Unjust

The rare circumstances in which a forum selection provision may be deemed unreasonable do not apply here. A forum selection provision is unreasonable only if (i) its incorporation into the contract is the result of fraud or undue influence; (ii) the selected forum is so gravely difficult and inconvenient as to effectively deprive the plaintiff of her day in court; or (iii) enforcement contravenes a strong public policy in the forum in which the suit is brought. *Argueta*, 87 F.3d at 325. None of these three rare circumstances is present here.

*First*, Plaintiffs' agreement to the Terms, including the forum selection clause, was not the product of fraud or undue influence. "For a party to escape a forum selection clause on the grounds of fraud, it must show that 'the *inclusion of that clause in the contract* was the product of fraud or coercion.'" *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (affirming grant of motion to dismiss based on forum selection clause) (emphasis in original). When a plaintiff fails to allege that a contract's inclusion of a forum selection clause is the result of fraud, a court will not speculate and infer fraud by default. *See In re Facebook*, 367 F. Supp. 3d at 1121-22 (declining to "infer fraud" when the plaintiffs did not include any allegations in their complaint that a forum selection provision was the result of fraud). Nor could Plaintiffs make any cogent allegations of fraud or undue influence; multiple federal courts have held that the Terms created a valid and enforceable agreement and, in so holding, rejected arguments that there was any procedural or substantive unconscionability in the Terms. *See, e.g.*, *Hu*, 2024 WL 4481439, at *18 ("[T]he Court finds that the Registration Screen provided Plaintiffs 'reasonably conspicuous notice' of the Terms, and Plaintiffs, through their conduct, unambiguously manifested assent to the Terms."); *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1124 (S.D. Cal. 2024) (similar).

*Second*, litigating in New York would not deprive Plaintiffs of their day in court. *See In re: CytRx Corp. S'holder Derivative Litig.*, 2015 WL 9871275, at *5 (C.D. Cal. Oct. 30, 2015) ("That evidence and witnesses may be located in California does not make the Delaware Court of Chancery so inconvenient as to render the forum-selection clause unreasonable."). Far from it. While the Plaintiff identified in the case caption (Jones) is a California resident, the majority of the Plaintiffs (~94%) are *not California residents*, *see* Compl., Attachment 1, at 42-53—negating any argument that California is somehow the most convenient place for this case to be litigated. Moreover, thirty-seven of the Plaintiffs are New York residents, in addition to many others that reside within the New York, New York metro area or

neighboring states. Thus, litigating in New York cannot be considered more inconvenient than litigating in California, and Plaintiffs would have their day in court in EDNY.

*Third*, proving a forum selection clause defies a strong public policy of the forum in which the suit is brought requires Plaintiffs to "point to a statute or judicial decision that clearly states such a strong public policy." *Sun*, 901 F.3d at 1090. Forum selection clauses have been found to contravene a strong California public policy when the chosen forum deprives a plaintiff of rights only available in California courts. *See, e.g.*, *Miller v. Hearst Commc'ns, Inc.*, 2012 WL 3205241, at *3 (C.D. Cal. Aug. 3, 2012) (explaining that a forum selection clause contravened California public policy when it, combined with a choice of law provision, deprived a plaintiff of the ability to bring claims under California's Shine the Light Statute in the forum state court); *N.Z.*, 2025 WL 1122493, at *5-7 (explaining that a forum selection clause diminished the rights of the plaintiffs to bring consumer class actions because the foreign forum court lacked a comparable class action mechanism). Here, there is no such issue.

New York offers the same or similar remedies as the Central District of California. *See Sun*, 901 F.3d at 1092 ("[C]ourts must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs no remedies whatsoever."); *In re Facebook*, 367 F. Supp. 3d at 1120 ("Those remedies need not [even] stem from the same statutes originally asserted."). Because the Terms specifically state that disputes will be governed by "applicable federal laws of the United States," Plaintiffs can avail themselves of the same laws and seek the same remedies whether this action is litigated in the Central District of California or a federal court in New York. *See* Terms § 18.3. Accordingly, the Terms' forum selection clause does not contravene a strong California public policy.

**B.     The Doctrine of *Forum Non Conveniens* Mandates Dismissal Or, in the Alternative, a Transfer to EDNY, Based on the Forum Selection Clause**

"In dismissing an action on *forum non conveniens* grounds the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). Where a forum selection clause is the basis of a motion to dismiss, however, "the court *cannot* consider the 'private interest' factors such as the plaintiff's choice of forum and the convenience of parties and witnesses," and must instead consider only the public interest factors. *Nibirutech Ltd. v. Jang*, 75 F. Supp. 3d 1076, 1080 (N.D. Cal. 2014) (referring to *Atl. Marine*) (emphasis added). Here, EDNY is an adequate alternative forum and the public interest factors favor dismissal due to the increased administrative and judicial efficiency of resolving all related cases in a single court before the same judge. Accordingly, this Court should dismiss Plaintiffs' Complaint under *forum non conveniens* or, in the alternative, transfer it to EDNY.

### 1.     An Adequate Alternative Forum Exists

An alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum. *Lueck*, 236 F.3d at 1143. "An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano v. Occidental Petroleum Corp*, 643 F.3d 1216, 1225 (9th Cir. 2011). Here, both prongs are satisfied for the following reasons.

*First*, Temu is amenable to service of process in EDNY, evidenced by the forum selection clause in the Terms, *see* Terms § 18.4, and the instant motion seeking transfer to EDNY. Additionally, Temu is already litigating multiple similar cases in EDNY, demonstrating that Temu has previously accepted service of process

1   in that District. *See, e.g.*, *Hu*, No. 23-cv-06962, (E.D.N.Y. 2023); *Ziboukh*, No. 24-
2   cv-03733 (E.D.N.Y. 2024)*.*

3       *Second*, EDNY can provide the same remedies available to Plaintiffs in the
4   Central District of California, as the same federal laws would govern this action.
5   "The requirement that the alternative forum offer some remedy for a plaintiff's harm
6   is 'easy to pass; typically, a forum will be inadequate only where the remedy
7   provided is so clearly inadequate or unsatisfactory, that it is no remedy at all.'"
8   *Nibirutech*, 75 F. Supp. 3d at 1082 (quoting *Carijano*, 643 F.3d at 1225-26); *see also*
9   *Lueck*, 236 F.3d at 1144 (finding New Zealand to offer an adequate alternative forum
10  even when New Zealand law did not allow the plaintiffs to maintain the same suit at
11  issue and when New Zealand law only offered an administrative, not a judicial,
12  remedy); *Neuralstem, Inc. v. ReNeuron, Ltd.*, 365 F. App'x 770, 771 (9th Cir. 2010)
13  (finding England to offer an adequate alternative forum even when English law
14  offered a less favorable remedy than that requested by the plaintiff).

15      Because Temu consents to the jurisdiction of EDNY and because the same
16  relief would be available to Plaintiffs in that court, EDNY constitutes an adequate
17  alternative forum.

18      **2.    The Public Interest Factors Support Dismissal Or, in the**
19           **Alternative, a Transfer to EDNY**

20      "In the typical case not involving a forum-selection clause, a district court
21  considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate
22  both the convenience of the parties and various public-interest considerations." *Atl.*
23  *Marine*, 571 U.S. at 62. "The calculus changes, however, when the parties' contract
24  contains a valid forum-selection clause, which represents the parties' agreement as
25  to the most proper forum." *Id.* at 63 (citation and quotation marks omitted). The
26  presence of a forum selection clause mandates that district courts adjust the typical
27  analysis in three ways: (1) "the plaintiff's choice of forum merits no weight"; (2) the
28  court "should not consider arguments about the parties' private interests" but "*may*

*consider* arguments about public-interest factors *only*"; and (3) "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* at 63-64 (emphasis added).

While "[a] court may consider public interest factors, [] such factors will *rarely defeat a motion to transfer* in the face of a valid, applicable forum-selection clause." *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1027 (N.D. Cal. 2020) (*quoting Atl. Marine*, 571 U.S. at 64, 62 n.6) (emphasis added). "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64. The public interest factors that a district may consider include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Boston Telecomms. Grp., Inc.*, 588 F.3d at 1211. To the extent the Court even considers these factors, the factors on balance weigh strongly in favor of dismissal and/or transfer to EDNY.

**Local Interest.**  The first public interest factor, local interest in the lawsuit, weighs in favor of transfer. Plaintiffs' allegations relate to their alleged use of the Temu platform on their phones or other electronic devices; there is no specific alleged conduct that occurred in California—or at least none that has any material connection to California. Furthermore, Plaintiffs are diverse; while a small subset of them reside in California, the vast majority do not. *See supra* at 9 (noting that ~94% of the Plaintiffs are *not California residents*). Moreover, many of the Plaintiffs reside in or near New York, the parties' agreed-upon forum. Setting aside the minority (6%) of Plaintiffs who are California residents, Temu is not a California company and "California does not have a local interest in this matter," which weighs in favor of transfer. *Wallace*, 2020 WL 4938361, at *7 (Where "defendants are not California corporations, California has little interest in keeping the litigation in this state to

1  deter future wrongful conduct." (quoting *Guimei v. Gen. Elec. Co.*, 91 Cal. Rptr. 3d

2  178, 190 (2009)); *see also Reddy v. Mediscribes, Inc.*, 2020 WL 2220202, at *7

3  (C.D. Cal. Feb. 18, 2020) ("Moreover, California has a significantly reduced interest

4  in suits against defendant-corporations when defendants are not in-state

5  corporations.").

6      **Court's Familiarity.** The second public interest factor weighs strongly in

7  favor of dismissal or transfer for two reasons. *First*, there are three related cases in

8  EDNY. The Court has already considered these issues and therefore is uniquely

9  familiar with not only the law in question, but also the facts relating to Plaintiffs'

10  allegations, and transfer will significantly promote judicial economy. *See Unicolors*

11  *Inc. v. Myth Clothing Co.*, 2016 WL 738289, at *8 (C.D. Cal. Feb. 22, 2016) ("An

12  important consideration in determining whether the interests of justice dictate a

13  transfer of venue is the pendency of a related case in the transferee forum.");

14  *Hackwith v. Apple Inc.*, 2009 WL 10674053, at *4 (C.D. Cal. Aug. 12, 2009) (related

15  case with "identical factual issues and [] many of the same causes of action" weighed

16  in favor of transfer). *Second*, the Terms include a New York state choice of law

17  provision. As such, New York courts will be "at home with the law" when

18  adjudicating the merits of the dispute. *Cleanview Distrib. Grp. LLC v. LGL*

19  *Holdings, LLC*, 2021 WL 5969502, at *3 (C.D. Cal. Nov. 12, 2021) (finding that

20  this factor weighed in favor of transfer where the agreement had a choice of law

21  provision of the transferee forum); *see also Romano v. Weiss*, 2017 WL 3081694, at

22  *3 (C.D. Cal. Feb. 15, 2017) ("As district courts sitting in New York are generally

23  more familiar with New York law, this factor weighs in favor of transfer."). As for

24  the California claims, "other federal courts are fully capable of applying California

25  law" and this weighs only slightly against transfer. *Wallace*, 2020 WL 4938361, at

26  *7.

27      **Burden.** The third factor has only a minimal impact on the analysis. Because

28  this case involves almost a thousand Plaintiffs from nearly all fifty states, litigating

1   in any forum would necessarily involve out-of-state parties. As such, proceeding in
2   the parties' contractually-selected forum imposes no greater burden on the court or
3   jury than any alternative. *See Westside Winery, Inc. v. Palm Bay Int'l, Inc.*, 2018 WL
4   4278665, at *5 (N.D. Cal. Aug. 3, 2018) ("[T]his case arises from a dispute over a
5   nationwide distribution and marketing contract. A trial in this case will not burden a
6   New York jury any more than a California jury.").

7       **Congestion.** The fourth public interest factor also weighs in favor of transfer.
8   Because the "Central District of California [] is one of the busiest districts in the
9   country," it is likely that "trial [will] be speedier" in another district. *Satisfied Brake*
10  *Prods. Inc. v. Savage*, 2010 WL 11595845, at *8 (C.D. Cal. Dec. 2, 2010).

11      **Cost**. Finally, the dispute is no more related to California than it is to New
12  York, and there is no additional cost to transferring the case to New York.

13      While the Court should enforce the forum selection clause without the need
14  to evaluate the public interest factors, to the extent the Court does consider them, the
15  factors weigh strongly in favor of dismissal or, in the alternative, transfer to EDNY.

16  **V.    CONCLUSION**

17      For the foregoing reasons, Defendant requests that the Court dismiss
18  Plaintiffs' Complaint, or in the alternative, transfer this action to EDNY.

19
20
21
22
23
24
25
26
27
28

1  Dated: June 30, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LATHAM & WATKINS LLP

By:   */s/ Alexander C.K. Wyman*
     Alexander C.K. Wyman
      *alex.wyman@lw.com*
     355 South Grand Avenue, Suite 100
     Los Angeles, CA 90071
     Telephone:  +1.213.485.1234
     Facsimile:  +1.213.891.8763

     Serrin Turner (*pro hac vice*)
      *serrin.turner@lw.com*
     Matthew P. Valenti (*pro hac vice*)
      *matthew.valenti@lw.com*
     1271 Avenue of the Americas
     New York, NY 10020
     Telephone:  +1.212.906.1200
     Facsimile:  +1.212.751.4864

     *Attorneys for Defendant*
     *Whaleco Inc. d/b/a Temu*

1

## CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for Defendant Whaleco Inc., certify that

3  this Memorandum of Points and Authorities contains 4,976 words, which complies

4  with the word limit of L.R. 11-6.1.

5

6  Dated: June 30, 2025                    Respectfully submitted,

7                                          LATHAM & WATKINS LLP

8                                          By:  _/s/ Alexander C.K. Wyman_
                                               Alexander C.K. Wyman
9                                               *alex.wyman@lw.com*
                                               355 South Grand Avenue, Suite 100
10                                             Los Angeles, CA 90071
                                               Telephone:  +1.213.485.1234
11                                             Facsimile:  +1.213.891.8763

12                                             Serrin Turner (*pro hac vice*)
                                                *serrin.turner@lw.com*
13                                             Matthew P. Valenti (*pro hac vice*)
                                                *matthew.valenti@lw.com*
14                                             1271 Avenue of the Americas
                                               New York, NY 10020
15                                             Telephone:  +1.212.906.1200
                                               Facsimile:  +1.212.751.4864
16

17                                             *Attorneys for Defendant*
                                               *Whaleco Inc. d/b/a Temu*
18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS OR, IN THE ALT., MOTION
TO TRANSFER FOR FORUM NON CONVENIENS